IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| KEITH EUBANKS, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | No. MO:21-CV-061-DC |
| | § | |
| ENDEAVOR ENERGY RESOURCES, LP, | § | |
|     *Defendant*. | § | |

## ORDER

BEFORE THE COURT is Defendant Endeavor Energy Resources, LP's ("Defendant" or "Endeavor") Motion for Summary Judgment (Doc. 14), Plaintiff Keith Eubanks's ("Plaintiff" or "Eubanks") Response (Doc. 16), and Defendant's Reply (Doc. 17). Having considered the parties' arguments, the evidence, and the relevant law, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 14).

### I.  BACKGROUND

This is a retaliation case. In 2014, Endeavor hired Eubanks as a Safety Advisor under Health Safety Environment ("HSE") Director, Mark Anderson ("Anderson"). (Doc. 16-1 at Eubanks Depo., 49:12–51:20). In 2015, Eubanks was promoted to HSE Supervisor, a position he maintained until his termination in February 2020. (*Id*. at Eubanks Depo., 51:21–52:9). Anderson left Endeavor in May 2019, and Endeavor hired Mark Webster ("Webster") to replace him in June 2019. (*Id*. at Webster Depo., 18:21–19:23). Webster started working for Endeavor in July 2019. (*Id*.). In August 2019, Webster identified positive issues and areas for improvement during a mid-year review of Eubanks. (*Id*. at Webster Depo., 62:12-23).

Eubanks observed Webster make comments about another employee's colorblindness. (*Id*. at Eubanks Depo., 10:15–11:21). Eubanks suffers from hearing loss which requires a

1

hearing aid.  (*Id*. at Eubanks Depo., 201:2–202:21).  Webster made comments about how he would not repeat himself to Eubanks.  (*Id*. at Eubanks Depo., 13:13–14:18).  Eubanks told Webster not to make comments about his hearing.  (*Id*. at Eubanks Depo., 16:21–17:20).  Eubanks also reported it verbally to another employee, Amanda Cooke ("Cooke") in Human Resources.  (*Id*. at Eubanks Depo, 28:20–29:23).  Webster made comments about another employee's obesity.  (*Id*. at Eubanks Depo., 9:16–10:14).

In January 2020, another mandatory annual evaluation took place.  (*Id*. at Webster Depo., 41:10-16; 89:7–91:18).  The written evaluation noted Eubanks needed improvement in certain areas including organizational leadership.  (*Id*. at Webster Depo., 97:13–98:4).  On January 24, 2020, Eubanks made the following comments in response to this evaluation:

> I strongly disagree with most of this evaluation and feel it is unfair on many levels.  We operated for near 7 months of 2019 with no Director and many people outside our group commented that HSE had really improved during that time.  I don't seem to get any credit for that period of time.  Your management style is unlike anything I have seen in my career.  It takes time to understand your expectation and process.  I sincerely request you stop making comments on employee's physical disabilities.

(Doc. 16-1 at 260).  According to Eubanks, Human Resources never discussed this request with him.  (*Id*. at Eubanks Depo., 33:8–39:15).

On February 11, 2020, Webster met with Cooke and discussed Eubanks.  (*Id*. at Cooke Depo., 169:11–170:18).  Webster mentioned team feedback was very negative, Eubanks was pushing back on everything, and not choosing to be a leader, Eubanks was undermining Webster, and that he needed to get Eubanks out of production.  (*Id*. at Cooke Depo., 165:7-20).  Webster expressed that this was no way to work, and he would always be on guard.  (*Id*. at Cooke Depo., 165:22-23).  Both Cooke and Webster agreed that performance improvement plans do not work

and should be disregarded as a recommendation from the Human Resources department. (*Id*. at Cooke Depo., 165:13–167:25).

On February 21, 2020, Eubanks's employment with Endeavor was terminated for lack of performance. (*Id*. at 265). It was the decision of Webster to terminate Eubanks along with legal counsel, the Vice President of Endeavor's legal department. (*Id*. at Cooke Depo., 122:19-25).

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, he must establish all the essential elements of his

claim that warrant judgment in his favor.  *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).  In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007).  Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id*.  After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

### III.   DISCUSSION

The Americans With Disabilities Act ("ADA") prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  When a plaintiff presents indirect evidence of unlawful retaliation under the ADA, the Court applies the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*.[1]  To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must

---

[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019).  Because the Court employs the burden-shifting scheme applicable to claims under Title VII, the Court cites

4

show that: (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (citing *Nall*, 917 F.3d at 348). If the employee establishes a prima facie case of retaliation, the employer must come forward with a legitimate, nondiscriminatory reason for its action. *Id*. If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation. *Id*. "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*. (quoting *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999)).

After conducting the burden-shifting analysis, the Court concludes that Eubanks has failed to meet his summary judgment burden of pointing to evidence demonstrating that the legitimate, non-discriminatory reasons proffered by Endeavor for its actions were pretextual.

**A.     Prima Facie Case of Retaliation**

Eubanks's cause of action rests on the fact that his supervisor fired him three weeks after Eubanks requested Webster to "stop making comments on employee's physical disabilities," on January 24, 2020, in response to a written evaluation noting Eubanks needed improvement in certain areas including organizational leadership. (Doc. 16-1 at 260). This activity is protected under the ADA, which provides protection for individuals who oppose any practice of discrimination or make a charge of discrimination. *See* 42 U.S.C. § 12203 (prohibiting discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or

---

to cases involving Title VII claims below. *See Feist v. La., Dep't of Justice, Office of the Attorney Gen*., 730 F.3d 450, 454 (5th Cir. 2013) (citing to both Title VII and ADA cases when discussing a claim of retaliation under the ADA).

participated in any manner in an investigation, proceeding, or hearing under [the ADA]"). Eubanks has established the first element of his prima facie case.

Eubanks identifies adverse employment actions which he suffered in retaliation for his engagement in protected activity—namely, the termination of his employment with Endeavor. The Court concludes these actions constitute adverse employment actions. Thus, Eubanks has established the second element of his prima facie case.

To demonstrate the third element of a prima facie case of retaliation—a causal connection between the protected activity and the adverse action—a plaintiff must demonstrate that the employer's decision "was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)) (internal quotation omitted). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." The evidence Eubanks presents regarding the causal connection is the temporal proximity of his protected activities and the adverse employment actions.

The Supreme Court of the United States has observed that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close.'"[2] The United States Court of Appeals for the Fifth Circuit has ruled that a six-and-a-half-week timeframe is

---

[2] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001); *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (commenting on *Breeden* and observing that, "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation" but also rejecting the "notion that temporal proximity standing alone can be sufficient proof of but for causation" once the burden shifts back to the employee under the *McDonnell Douglass* framework).

sufficiently close[3] but a five month lapse is not close enough without other evidence of retaliation to establish the "causal connection" element of a prima facie case of retaliation.[4]

The three-week lapse between when Eubanks requested Webster to "stop making comments on employee's physical disabilities," on January 24, 2020, and Eubanks's termination on February 21, 2020, is sufficient evidence of causality to establish a prima facie case of retaliation arising out of those actions.

## B.   Legitimate, Non-Discriminatory Reasons for Endeavor's Actions

Because Eubanks has established his prima facie case of retaliation arising out of his request that Webster "stop making comments on employee's physical disabilities," on January 24, 2020, and the termination of his employment, the burden shifts to Endeavor to put forth a legitimate, non-discriminatory reason for its actions. *See Nall*, 917 F.3d at 349. "This burden is satisfied by introducing evidence which, if true, would permit the trier-of-fact to conclude that the termination was nondiscriminatory." *Medina*, 238 F.3d 674.

Endeavor points to the following evidence concerning Plaintiff's deteriorating job performance in support of Endeavor's legitimate, non-discriminatory reason for terminating Plaintiff's employment:

- In May 2019, prior to Webster starting, Eubanks was charged with the creation of a comprehensive Emergency Response Plan and other safety trainings. (Doc. 14-2 at 89–91). By December 6, 2019, a progress report indicated Eubanks had not even started the development of trainings on various machinery scheduled to be completed within two to three months of the update. (*Id*. at 86). On this status report, Eubanks admitted he had not started a final review or the Emergency Response Plan that was scheduled to come on in March 2020. (*Id*.). On December 29, 2019, Webster requested an update from Eubanks regarding the creation of a comprehensive Emergency Response Plan—a task that was never completed. (Doc. 14-5 at 24). Webster followed up several times over the

---

[3] *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015); *see also Wilson v. Noble Drilling Servs., Inc*., 405 F. App'x 909, 913 (5th Cir. 2010) (unpublished) (concluding that one month between was sufficiently close).
[4] *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 472 (5th Cir. 2002) (noting that a district court in this circuit has found that "a time lapse of up to four months has been found sufficient").

next month regarding progress.  (*Id*. at 26–28).  On January 30, 2020, HSE Systems Analyst Supervisor Rick Epler ("Epler") informed Webster that the draft Emergency Response Plan required significant work including formatting changes and clean-up.  Epler went on to describe Eubanks as a good guy who "is not getting it or supportive of chang[e]" as well as a person who likes to "stick to the old ways (just do the minimum)."  (*Id*. at 35).

- Three to four months after starting his employment at Endeavor, Webster considered terminating Eubanks's employment but chose to work with him in order to try to improve Eubanks's job performance.  (Doc. 14-2 at 368; Cooke Depo., 144:21-25).

- On June 10, 2019, Engineering Consultant Amanda Roviara sent an email notifying Webster that Eubanks and others on the HSE team needed to propose changes and additions to meet their needs so that the system could be implemented in full by July 1, 2019.  (Doc. 14-2 at 83–84).  On August 20, 2019, Webster noted that Eubanks failed to put together a plan to centralize complaints and other issues.  (Doc. 14-5 at 17).  These problems remained until the eve of Eubanks's termination in February 2020.  (Doc. 14-5 at 38).

- On July 25, 2019, Webster noted Eubanks was resistant to change.  (Doc. 14-5 at 8).

- On July 30, 2019, Webster stated that he received complaints about Eubanks's leadership ability.  (Doc. 14-5 at 10).

- On July 31, 2019, Chris White informed Webster that she needed to "get out from under [Eubanks]."  (Doc. 14-5 at 11).

- On August 12, 2019, Eubanks failed to complete a preliminary incident report in a timely fashion.  (Doc. 14-5 at 14).

- In a mid-year review, Webster informed Eubanks that he needed to improve with identifying problems, focus on building relationships and avoid negative comments as well as "follow-through and deliver" on various projects.  (Doc. 14-5 at 15).

- In September 2019, Webster received text messages from a former employee describing Eubanks as a "cancer" stating Eubanks "doesnt [sic] produce anything but mayhem and distrust" after noting multiple tasks remain uncompleted.  (Doc. 14-2 at 100).

- On December 16, 2019, Webster noted Eubanks continued to exhibit negativity with his peers and failed to follow through on multiple projects and actions.  (Doc. 14-5 at 26).  Further, Webster's supervisor, Mike Short ("Short"), described Eubanks as a person who thinks he is "always right" and "he never listens."  (*Id*. at 30).  Short stated Eubanks is "not the leader we need."  (*Id*. at 39).  Other employees noted Eubanks did not work with others to plan Contractor Safety Meetings (*Id*. at 33), and that Eubanks "does not plan or communicate well."  (*Id*. at 34).

- In 2019, Webster completed an annual performance evaluation of Eubanks and rated him as "Needs Improvement" with respect to spending more time in the field, (Doc. 14-2 at 63), personal and team development (Doc. 14-2 at 66) and organizational leadership: "[Eubanks] needs to continue to improve in leading self, team, and by example his peers and the broader HSE team, in progressing to be more effective contributors.  Initially, I recognized strong negative behaviors from him and his team that organizational activity was not within their influence, and that changes necessary would not be achievable.  I saw little passion, drive or commitment, and this had lead [sic] to a negative work environment (I would categorize as a 'victim' mentality)." (Doc. 14-2 at 65).

- Evaluations in 2019 also noted with respect to communication that Eubanks "has not been clear in developing proposals and plans for project type work. This has led to a lack of understanding within the broader organization, including confusion within HSE staff. . . . There have also been instances where lack of communication and engagement with his peers has caused confusion, misalignment and loss of credibility.  [Eubanks] needs to engage with his peers, ensuring that approaches and plans which can impact the broader organization are vetted, planned and supported." (Doc. 14-2 at 64).

- Further, evaluations in 2019 state: "Negative behaviors and communication regarding accountability for progressing and improving HSE process and performance have been observed by me[.]" (*Id.*).

- Overall for Eubanks's performance in 2019, Webster concluded, "Improvements are needed around passion, commitment and drive to improve: proposing, planning and delivery; alignment and communication with peers; leading, developing and enabling his team." (Doc. 14-2 at 68).

- On February 11, 2020, Human Resources Director Cooke informed Webster that she believed Eubanks was undermining Webster's authority as a supervisor based on information obtained during an investigation into his request that Webster stop making comments about employees' disabilities. (Doc. 14-2 at 369; Cooke Depo., 173:2-5).

As a result of Eubanks's declining job performance, as outlined above, Webster made the decision to terminate Eubanks's employment on February 21, 2020.  (*Id.*).  Because Endeavor put forth a legitimate, non-discriminatory reason for its actions, the burden then shifts back to Plaintiff to demonstrate that Endeavor's stated reasons are pretext for retaliation.  *See Nall*, 917 F.3d at 349.

**C.     Pretext**

Plaintiff must offer some evidence from which a jury could infer that retaliation was the real motive for terminating his employment. Plaintiff fails to offer anything more to substantiate his claim of retaliation than the facts of his protected action on January 24, 2020, and the termination of his employment three weeks later, on February 21, 2020. This close temporal proximity is sufficient to establish the causal connection element of his prima facie case, but it is insufficient to demonstrate pretext. *See Strong*, 482 F.3d at 808 (highlighting that, although temporal proximity alone, when very close, can establish a prima facie case of retaliation, it cannot serve as sufficient proof of pretext). Plaintiff has failed to meet his burden on summary judgment to demonstrate that there is a dispute of fact whether Endeavor's stated reasons for its actions were pretextual.

Ultimately, Eubanks cannot show Endeavor would not have terminated Eubanks's employment but for the alleged complaints of disability discrimination. *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 570 U.S. 338, 362 (2013). The record shows Endeavor took steps to terminate Eubanks's employment based on legitimate, non-discriminatory means. Eubanks had problems working together with his coworkers, he did not follow-through on projects including the comprehensive Emergency Response Plan he was tasked to complete, and Eubanks had multiple personality issues with Webster, his supervisor. Following an investigation, Human Resources reported to Webster that Eubanks was undermining Webster's authority.

"[T]he question is whether the employer's reason, even if incorrect, was the real reason for its actions." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002) (affirming dismissal of age discrimination claim). "Merely disputing [the employer's] assessment of his performance will not create an issue of fact." *Id*. Rather, "the issue at the pretext stage is

whether [the employer's] reason, even if incorrect was the real reason for the [employee's] termination." *Id*.

Other than temporal proximity, Eubanks has not put forth any evidence that his request for Webster to stop making comments about people's disabilities had anything to do with his termination.  Webster considered terminating Eubanks's employment three to four months after Webster began his role as Eubanks's supervisor but decided to work with Eubanks to improve his job performance.  Webster's documentation of multiple complaints received regarding Eubanks's employment supports the conclusion that Endeavor's legitimate, non-discriminatory reasons for its actions were the real reasons for Eubanks's termination and not the request made by Eubanks in response to a negative performance evaluation.

Importantly, courts do not second guess the performance determinations of employers absent evidence of discriminatory animus. *Williams v. N. Tex. Tollway Authority,* No. 3:08-CV-1840-G 2010 WL 2403740, at *7 (N.D. Tex. Apr. 27, 2010) (citing *Amezquita v. Beneficial Tex. Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008)).  The fact that Webster continually attempted to work with Eubanks for months to improve his job performance prior to his termination shows that Endeavor had no discriminatory animus.  While Eubanks disputes Endeavor's assessment of his performance, this does not create an issue of fact to defeat summary judgment. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002).

Because Eubanks cannot show Endeavor terminated Eubanks's employment as a result of Eubanks's request that Webster stop making comments regarding people's disabilities, summary judgment in this case is appropriate.  The summary judgment evidence establishes Endeavor terminated Eubanks's employment due to the complaints about Eubanks's job performance that took place throughout the seven months Webster supervised Eubanks, including Eubanks's

Performance Evaluation evidencing he needed to improve in multiple areas. Thus, Eubanks has not made the required showing to prove his termination would not have occurred but for his protected activity. Therefore, the Court **GRANTS** Endeavor's Motion for Summary Judgment.

### IV. CONCLUSION

Endeavor is entitled to summary judgment on Plaintiff's claims of unlawful retaliation under the ADA because Plaintiff has failed to demonstrate that there is a dispute of fact as to whether Endeavor's stated reasons for terminating his employment were pretextual.

It is therefore **ORDERED** that Endeavor's Motion for Summary Judgment is hereby **GRANTED**. (Doc. 14).

It is so **ORDERED**.

SIGNED this 16th day of July, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE